IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DUSTIN RAY RHODES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 08-0523-CG-C |
| | ) |
| PAUL AND LINDA DAVIS | ) |
| d/b/a P&L CONSTRUCTION and | ) |
| BAMACO INC., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On September 15, 2008, the plaintiff Dustin Ray Rhodes filed a complaint in this court against Bamaco, Inc. ("Bamaco") and Paul & Linda Davis d/b/a P & L Construction Co. ("P&L") seeking damages for negligence, wantonness and temporary disability and medical expenses for injuries he allegedly sustained when he was electrocuted while working in George County, Mississippi. (Doc. 5). On March 2, 2009, P&L was dismissed from the case because the plaintiff failed to provide proof of service within 120 days of the commencement of this action. (Doc. 16).[1] On May 6, 2010, this court granted Bamaco's motion for summary judgment as to all of the plaintiff's claims. (Doc. 110). Furthermore, the order provided that "it may be appropriate to award… sanctions under Rule 37 of the Federal Rules of Civil Procedure" because of Bamaco's failure to alert the plaintiff it had workers' compensation insurance in its initial or supplemental disclosures. As a result, this court invited the "plaintiff to submit evidence of any

---

[1] The plaintiff thereafter filed a motion for reconsideration, which this court granted giving the plaintiff until May 28, 2009, to serve P&L. (Doc. 17 & 24). Since no proof of service was filed by that date, this court again entered an order dismissing P&L without prejudice. (Doc. 25).

1

expenses he incurred due to the failure to disclose." (Id. at 14 n. 7). This matter is now before the court on (1) the plaintiff's motion for sanctions (Doc. 111), Bamaco's response (Doc. 118), and the plaintiff's reply (Doc. 119); (2) the plaintiff's motions to alter this court's summary judgment order (Docs. 113 & 114), Bamaco's response (Doc. 120), and the plaintiff's reply (Doc. 122); (3) Bamaco's motion to strike portions of Chase Dearman's affidavit (Doc. 121) and the plaintiff's response (Doc. 123); and (4) the plaintiff's motion to strike portions of Michael D. Knight's affidavit (Doc. 124), Bamaco's response and filing of a supplemental affidavit (Doc. 125), and the plaintiff's motion to strike portions of the substituted affidavit. (Doc. 126). For the reasons stated below, the plaintiff's motions to alter this court's summary judgment order are due to be DENIED, the plaintiff's motion for sanctions is due to be GRANTED, and Bamaco's motion to strike portions of Chase Dearman's affidavit (Doc. 121) and the plaintiff's motions to strike portions of Michael D. Knight's affidavit (Doc. 124 & 126) are MOOT.

## FACTS

Bamaco asserts that it is a general contractor that manages disaster-related contracts, and, as such, it secures disaster-related work then subcontracts the physical labor out; thus none of its employees ever do physical disaster-related clean-up work. (Doc. 73-1, Mitchell Aff., ¶ 4). After Hurricane Katrina devastated the Gulf Coast in late August 2005, Bamaco secured disaster-related clean-up work in Mississippi. In connection with that work, Bamaco entered into a subcontract with P&L for debris removal, and pursuant to that contract, P&L employees or P&L's subcontractors' employees did all of the actual debris removal. (Id., ¶ 5). The plaintiff points out that the front page of the contract was dated September 3, 2005, but was not signed by the parties until September 15, 2005. (Doc. 85, pp. 1-3). On September 13, 2005, the plaintiff maintains that he began work for the defendants Bamaco and P&L "as a laborer for a hurricane

2

clean up crew... in George County, Mississippi." (Doc. 5, ¶ 4). "Within hours of beginning work," the plaintiff asserts that "a member of Defendants' crew instructed Plaintiff to move a fallen power line in order to pick up debris" and when he touched the power line "the power line was live and the Plaintiff was electrocuted", an event which caused "injuries from the electrocution" and a broken foot "requiring surgery." (Id., ¶¶ 7 & 8).

On March 9, 2006, Todd P. Resavage, Esq., filed a petition to controvert on behalf of the plaintiff against P&L with the Mississippi Workers' Compensation Commission (hereinafter "MWCC"). (Doc. 73-2. p. 4). P&L filed its answer to the petition on May 5, 2006. (Id., p. 3). On December 22, 2006, the plaintiff's petition to controvert was dismissed due to the plaintiff's failure to respond. (Id.). Although the plaintiff testified that he was not aware of this petition or any other claim being filed with the MWCC by an attorney on his behalf (Doc. 85-2, Rhodes Dep., p. 7), an official copy shows that the plaintiff signed the petition on February 22, 2006. (Doc. 92-4, p. 10).

The plaintiff filed the instant action on September 15, 2008 (Doc. 1), asserting claims against Bamaco and P&L Construction for disability benefits and medical expenses under the Worker's Compensation Laws of the State of Mississippi and for negligently and wantonly failing "to maintain a safe working environment" and failing "to properly train and supervise their employees." (Doc. 5, ¶¶ 19-23). In his prayer for relief, the plaintiff "demands judgment [and penalties] against the Defendants for the compensation and medical expenses to which Plaintiff is entitled under the Worker's Compensation Laws of the State of Mississippi" and also "general compensatory damages and punitive damages plus interest and costs against the Defendants". (Id., p. 3). P&L was later dismissed from the case because the plaintiff failed to provide proof of service within 120 days of the commencement of this action. (Doc. 16).

On May 6, 2010, this court granted Bamaco's motion for summary judgment as to all of the plaintiff's claims. (Doc. 110). First, this court found that the plaintiff's claim for workers' compensation benefits under Mississippi law was time barred by Mississippi Code Annotated § 71-3-35. (Id., p. 7). Second, this court found that the plaintiff's negligence claim was time barred by Alabama's statute of limitations. (Id., p. 12). Third, this court found that since Bamaco had secured payment of compensation for its employees pursuant to the Mississippi Workers' Compensation Act, Bamaco enjoyed immunity from the plaintiff's negligence and wantonness claims. (Id., p. 13).

## CONCLUSIONS OF LAW

### I. The plaintiff's motion for reconsideration

The plaintiff filed a motion asking this court to alter its order granting summary judgment pursuant to Federal Rule of Civil Procedure 59(e). (Doc. 133). Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." As the Court of Appeals for the Eleventh Circuit explains, "[t]he decision to alter or amend judgment is committed to the sound discretion of the district judge." Am. Home Assurance Co. v. Glenn Estess & Assoc., 763 F.2d 1237, 1238-1239 (11th Cir 1985). Although Rule 59(e) does not itself specify grounds for relief, this court previously summarized the proper standard of review under Rule 59(e) as follows:

> The decision of whether to grant or deny a Rule 59(e) motion is discretionary. A motion to alter or amend a judgment must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Generally courts have recognized three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. Reconsideration of a previous order is an <u>extraordinary</u> remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.

Sonnier v. Computer Programs & Sys. Inc., 168 F.Supp.2d 1322, 1336 (S.D.Ala.

2001)(internal quotations and citations omitted, emphasis in original).

The plaintiff maintains that "[b]ased upon recently acquired evidence from the Mississippi Worker's Compensation Commission which shows that Bamaco <u>did not</u> have a registered policy of worker's compensation insurance in place at the time of plaintiff's accident,…[2] Bamaco has attempted to work a fraud upon the Court by misleading the Court into the belief that it had 'procured payment' as comprehended by the Mississippi Workers' Compensation Act." (Doc. 113, ¶ 1).

Insuring or procuring payment under the Mississippi Workers' Compensation Act is a requirement for Bamaco to obtain immunity from the plaintiff's negligence and wantonness claims. Under § 71-3-7 of the Mississippi Workers' Compensation Act, a statutory employer "shall be liable for and shall secure the payment to his employees of the compensation payable

---

[2] This evidence is from an affidavit of Preston Williams, who is "employed by the Mississippi Worker's Compensation Commission". The affidavit provides the following:

2) Every employer subject to the Mississippi Workers' Compensation Law must file proof of compliance with the insurance provisions of the law.

3) Proof of an employer's coverage can be found by searching our database either by the name of the employer and the date of coverage, or by the employer's FEIN number and the dates of coverage.

4) A search of the insurance coverage verification database for either "Bamaco" or "Bamaco Inc." for the date of September 13, 2005 yielded no records of coverage.

5) A search of the insurance coverage verification database for the FEIN number "77060782" for the date of September 13, 2005 yielded no records of coverage.

6) There is no record of insurance coverage for either "Bamaco" or "Bamaco Inc." with the FEIN number 770607082 for the date of September 13, 2005.

(Doc. 113-1).

under [the Act's] provisions." Miss. Code Ann. § 71-3-7 (Rev. 2000). "An employer that has secured payment of compensation for its employees in compliance with section 71-3-7 enjoys immunity from suit in tort for an employee's injury or death." Washington v. Tem's Junior, Inc., 981 So.2d 1047, 1050 (Miss.Ct.App. 2008)(citing Miss. Code Ann. § 71-3-9; Lamar v. Thomas Fowler Trucking, Inc., 956 So.2d 878, 882 (Miss. 2007)). The requirement that an employer have an insurance policy that complies with the Workers' Compensation Act means that the employer must "insure payment of [workers'] compensation by a carrier authorized to insure such liability in [Mississippi]." Miss. Code Ann. § 71-3-75; see Toney v. Lowery Woodyards, 278 F.Supp.2d 786, 792 (S.D.Miss. 2003)("Section 71-3-75(1) provides the manner in which payment must be secured...").

In the previous order granting summary judgment, this court found that Bamaco satisfied its obligation to "secure payment of compensation" because Bamaco's workers' compensation insurer, Twin City Fire Insurance Company, has been a licensed insurer in the state of Mississippi since 1946 and was authorized to insure workers' compensation liability in that state at the time of the plaintiff's injury (See Doc. 73-1 & 92-5) and because Beverly Mitchell testified, and the plaintiff did not refute, that "[a]t the time of Dustin Rhodes' alleged injury, Bamaco had workers' compensation insurance." (Doc. 73-1, Mitchell Aff., ¶ 9). The plaintiff has not provided, nor can this court find, any support for the proposition that in order to "insure payment of workers' compensation", Bamaco must also "register" its workers' compensation policy with the MWCC.[3] As a result, the plaintiff's proffered evidence does not persuade this court to reconsider its previous order granting summary judgment.[4]

---

[3] In his reply, the plaintiff argues that Bamaco had a duty under the general procedural rules of the MWCC to register its workers' compensation insurance policy with the MWCC and (Continued)

In the remaining portions of his motions to alter this court's summary judgment order, the plaintiff does not assert any intervening change in law or present any other new evidence, thus he must show "the need to correct clear error or manifest injustice." However, the plaintiff generally restates the arguments he has already asserted or could have asserted in previous pleadings. A motion to alter or amend a judgment under Rule 59(e) is not a proper vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, --- U.S. ---, 128 S.Ct. 2605, 2617 n. 5, 171 L.Ed.2d 570 (2008)(citation omitted); see also Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009)(motions for reconsideration "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"(citation omitted)). Furthermore, the Eleventh Circuit has stated that "a motion to reconsider should not be used by the parties to set forth new theories of law." Mays v. United States Postal Service, 122 F.3d 43, 46 (11th Cir. 1997); see also Russell Petroleum Corp. v.

---

in turn provide proof of this registration and its failure to do so means Bamaco failed to "secure payment" as required by § 71-3-9 of the Mississippi Workers' Compensation Act. (See Doc. 122, pp. 1-3). The plaintiff has again failed to provide, and this court could not find, any support for the proposition that an alleged violation of a procedural rule of the MWCC establishes that an employer failed to "secure payment" of its workers' compensation policy.

[4] The plaintiff does provide a transcript of a conversation between Mr. Dearman and Ms. Cordova, who is a Hartford representative, which the plaintiff asserts confirms that the Hartford policy was not effective in Mississippi. (See Doc. 113-10). However, a plain reading of the provided policy shows that the policy was effective in Mississippi. The information page explicitly states that "Part Three of the policy applies to the states, if any, listed here: … ALL STATES EXCEPT MD, OH, WA, WV..." which obviously includes Mississippi. (Doc. 113-2, p. 14). "Part Three" states that [i]f you begin work in any one of [the states listed above] after the effective date of the policy and are not insured… for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page." (Id., p. 18). "Item 3.A" provides that "Part one of the policy applies to the Workers Compensation Law of the states listed here:" which according to Part Three would include Mississippi. (Id., p. 14). "Part one" is Bamaco's workers compensation insurance policy. (Id., p. 15).

Environ Prods., Inc., 333 F.Supp.2d 1228, 1234 (M.D.Ala. 2004)(relying on Mays to deny motion to reconsider based on new arguments). In light of the foregoing, this court finds that the order granting Bamaco's motion for summary judgment was not in clear error, thus Bamaco's motion was properly granted.

## II. Sanctions

The plaintiff asks this court to award sanctions against Bamaco pursuant to Federal Rule of Civil Procedure 37 because of Bamaco's failure to disclose the existence of its workers' compensation insurance policy in its initial disclosures and supplemental disclosures. (Doc. 111). Federal Rule of Civil Procedure 26 requires the parties to provide "for inspection and copying… any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed.R.Civ.P. 26(a)(1)(A)(iv). In this case, Bamaco stated in its initial disclosures that it did "not have insurance for the claims asserted against it in this action." (Doc. 86-1, p. 15). Furthermore, when Bamaco amended its initial disclosures later, it again stated it did "not have insurance for the claims asserted against it in this action." (Doc. 86-2, p. 5).

Unless Bamaco had "substantial justification" for failing to disclose its workers' compensation policy or unless Bamaco's mistake was harmless, Rule 37(c)(1) provides that this court can strike the workers' compensation policy and can prevent Bamaco from relying on the undisclosed evidence in a motion or at trial. However, the rule also provides that this exclusion is not mandatory.

Rule 37(c)(1) provides that instead of sanctioning a party by excluding evidence, this court may impose other appropriate sanctions. Those sanctions include awarding, upon motion, reasonable expenses and attorney's fees incurred because of the discovery violation.

Fed.R.Civ.P. 37(c)(1)(A); see also Bearint ex rel. Bearint v. Dorell Junvenile Group Inc., 389 F.3d 1339, 1348-1349 (11th Cir. 2004)(finding that a district court had discretion to either admit or exclude an untimely expert report).

Bamaco has not provided a "substantial justification" under Rule 37(c)(1) for failing to disclose the insurance policy. Bamaco argues that it failed to identify its workers' compensation insurance policy in its initial disclosures because it "has steadfastly maintained throughout this litigation that Plaintiff… was never employed by it in any capacity…" (Doc. 118, p. 2). Although Bamaco disputes the plaintiff's status as its employee, Rule 26 states that Bamaco "must provide… any insurance agreement under which an insurance business may be liable…" Fed.R.Civ.P. 26(a)(1)(A)(iv)(emphasis added). The complaint clearly shows that the plaintiff thought he was an employee of Bamaco, thus from the very commencement of this suit, Bamaco had notice that its workers' compensation insurance company may have been liable to satisfy a part of any possible judgment. As stated in this court's previous order, "it is clear to the court that, pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii) and (iv), Bamaco should have alerted the plaintiff that it had workers' compensation insurance at the time of the plaintiff's injury in its initial or supplemental disclosures…" (Doc. 110, p. 14 n. 7).

Furthermore, Bamaco has not established that its lack of disclosure was harmless. Had Bamaco been forthcoming with its workers' compensation insurance policy from the very beginning, the plaintiff admits that it "would not have continued to pursue a remedy (the civil action) which was not available." (Doc. 119, p. 5). Instead, the plaintiff proceeded through most of the discovery process as if no worker's compensation insurance policy existed, a viewpoint which caused the plaintiff to incur attorney's fees and expenses that could have been avoided if Bamaco had divulged the existence of the policy in its initial disclosures.

Therefore, this court finds that the plaintiff is entitled to reasonable expenses and attorney's fees that were incurred as a result of Bamaco's failure to disclose the worker's compensation insurance policy in its initial disclosures. In <u>Hensley v. Eckerhart</u>, the Supreme Court explained that the starting point for determining a "reasonable" fee is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." The applicant bears the burden of establishing entitlement and documenting the reasonable hours expended and reasonable hourly rates. 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); <u>see also</u> <u>Am. Civil Liberties Union of Ga. v. Barnes</u>, 168 F.3d 423, 427 (11th Cir. 1999). However, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. <u>Norman v. Hous. Auth. of the City of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988)(citing <u>Davis v. Bd. of Sch. Comm'rs of Mobile County</u>, 526 F.2d 865, 868 (5th Cir. 1976)).

The plaintiff has submitted affidavits from William M. Cunningham, Jr. and Clay T. Rossi who each state that rates of $300.00 per hour and $175.00 per hour are reasonable in this type of action and that the hours each of these lawyers spent were necessary in representing the plaintiff. (<u>See</u> Doc. 111-3, p. 2 & 4). The plaintiff also submitted a detailed time sheet for Mr. Cunningham and Mr. Rossi, who incurred 155.1 hours of time and 57.1 hours of time respectively in connection with this case. (<u>See</u> Doc. 111-3, pp. 5-20). This court concludes that $300.00 per hour for Mr. Cunningham and $175.00 per hour for Mr. Rossi is appropriate. Furthermore, the plaintiff submitted an affidavit of H. Chase Dearman who states that a rate of $200 per hour is reasonable in this type of action and that the hours he spent were necessary in representing the plaintiff. (<u>See</u> Doc. 111-4, p. 2). In addition, the plaintiff submitted a detailed

time sheet for Mr. Dearman, who incurred 161 hours of time in connection with this case. (See Doc. 111-4, pp. 7-14). This court concludes that $200 per hour for Mr. Dearman is appropriate.

A district court should exclude from the fee calculation hours that were not "reasonably expended." In other words, a plaintiff cannot recover fees related to "excessive, redundant, or otherwise unnecessary" hours that his lawyers worked. Hensley, 461 U.S. at 434. "Redundant hours generally occur where more than one attorney represents a client." Norman, 836 F.2d at 1301-1302. The plaintiff is requesting an award for three attorneys. Although "[t]here is nothing inherently unreasonable about a client having multiple attorneys" (Id. at 1302), the hours of multiple attorneys are only recoverable if the fee applicant "satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." Am. Civil Liberties Union of Ga., 168 F.3d at 432; see Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983). This court finds that the plaintiff has met this burden.

In its response, Bamaco does not object to the plaintiff's proposed rate or to any specific entries in the time sheets. However, Bamaco objects to the fact that the plaintiff has "submitted to this Court for its consideration an original or possibly reconstructed summary of hours spent on this litigation along with litigation expenses which appear to be generated from the date of the commencement of this litigation." (Doc. 118, p. 3). Specifically, Bamaco "submits that it is absurd for the Plaintiff's counsel to contend that virtually all of their attorney time and legal expenses generated in this litigation from its inception is in anyway related to [Bamaco]'s failure to disclose the existence of a workers compensation policy." (Id., p. 3 n. 1). This court disagrees.

11

Mr. Cunningham stated in his affidavit that from the outset of his participation in the litigation, § 71-3-9 of the Mississippi Workers' Compensation Act "was important because it allowed an action at law for damages on account of injury and death if an employer failed to secure payment of compensation" and since Bamaco indicated that it did not have insurance pursuant to the initial disclosures, Mr. Cunningham "made the decision that [the plaintiff] had a viable cause of action due to the failure of Bamaco to secure payment of compensation."  If Bamaco had disclosed that it had a workers' compensation insurance policy, Mr. Cunningham testified that he "would not have expended the time set forth [in his time sheet] in representing Mr. Rhodes." (Doc. 111-3, pp. 1-2).[5]  Mr. Dearman, like Mr. Cunningham, also set forth in his affidavit that after he "reviewed the initial disclosures" which "indicated that [it] did not have insurance", he "made the decision that Mr. Rhodes had a viable cause of action due [to] the failure of Bamaco to secure payment of compensation" and also testified that "[i]f Bamaco had disclosed that they had a workers' compensation insurance policy for the State of Mississippi as of the date of [the plaintiff's] injury, I would not have expended the time set forth in [the time sheet] in representing Mr. Rhodes." (Doc. 111-4, pp. 1-2).  In light of the foregoing, this court concludes that the requested attorney's fees for all three attorneys were incurred as a result of Bamaco's failure to disclose the worker's compensation insurance policy in its initial disclosures.

## CONCLUSION

After due consideration of all matters presented and for the reasons set forth herein, it is **ORDERED** that the plaintiff's motions to alter this court's summary judgment order (Docs. 113

---

[5] Mr. Rossi's affidavit provides the same sentiment as Mr. Cunningham's affidavit.  (See Doc. 111-3, p. 3).

& 114) are **DENIED**; that the plaintiff's motion for sanctions (Doc. 111) is **GRANTED** to the extent that the plaintiff is awarded **a total of $88,722.50 for attorney's fees and $7,135.53 for costs**; and that Bamaco's motion to strike portions of Chase Dearman's affidavit (Doc. 121) and the plaintiff's motions to strike portions of Michael D. Knight's affidavit (Doc. 124 & 126) are therefore **MOOT**.

**DONE and ORDERED** this 25th day of October, 2010.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE